**Howard F. SMITH, Appellant,**

**v.**

**Ervin AKERS and Allen W. Akers, Partners Doing Business as Akers & Akers Contractors, Appellees.**

Court of Appeals of Kentucky.

June 11, 1965.

Rehearing Denied Oct. 15, 1965.

Joe Hobson, Prestonsburg, Joseph J. Leary, Thomas F. Marshall, Frankfort, for appellant.

Howard, Francis & Howard, Prestonsburg, for appellees.

DAVIS, Commissioner.

Howard F. Smith sustained personal injuries when a short flight of steps he was using collapsed. The steps had been installed at Jenny Wiley State Park by the appellees, Akers and Akers, who had the construction contract at the park facility. A jury awarded appellant $40,000, but the trial court granted appellees a judgment n. o. v. following motions by appellees for new trial or judgment n. o. v. as permitted by CR 50.03.

Appellant seeks to reverse the judgment so granted and have judgment for $40,000 in lieu of it. The pivotal questions are whether appellees were negligent, and, if so, whether their negligence was superseded by the intervening action of a third person not under their control.

The flight of stairs involved in this action ascends from an elevated concrete landing to a passageway serving bedrooms. There are seven treads in the section of stairs. The original drawings for the construction provided that this section of stairs should have treads four feet wide, and the carriages or stringers supporting the treads were to be anchored at the base by sleeves fitting over pipes inserted into the concrete landing. Appellees, as contractors, set the pipes in the concrete so as to accommodate the four-foot carriages. Without fault of appellees the width of the treads for these stairs was changed to 5' 9"; accordingly, the pipes which had been set to receive the tread carriages at four feet on center were not suitable for the carriages supporting the wider treads.

For appellees it was shown that about six weeks before the accident the flight of stairs was set in place, on a temporary basis. The treads were mortised into the carriages prior to installation; then the entire framework was set up. This was accomplished by lifting the stairs so that the top of them rested against the header of the upstairs passageway. According to the carpenter who installed the steps originally (confirmed by Ervin Akers, one of the appellees), the top of the steps was thus secured: "Well, the top of the steps was cut and notched, where they went up against the header across there they was notched to where they would sit under the floor, and they were notched out an inch-and-a-half, I think, both ways, where they go up flush against the wall." Witnesses for appellees stated that the top of the stairs was so affixed that it could not have fallen unless there had been removal of the cleat affixed at the bottom of the steps.

According to the appellees (and not controverted by other evidence) the cleating of the bottom of the steps was accomplished by nailing a length of 2" x 4" lumber at the base of each carriage; then another piece of 2" x 4" material was extended under the bottom tread from the 2" x 4" pieces on each carriage. This latter piece of material was firmly placed behind the two metal pipes which had been installed in the concrete to receive the four-foot stairway. The foot of each carriage then rested on the concrete, and the 2" x 4" piece behind

the iron pipes was designed to prevent slippage of the stairs. The stairs as thus temporarily installed were used without incident from about July 1 until September 21, 1962, when the accident occurred.

For the appellees it was testified that the pieces of 2″ x 4″ material affixed to the base of the carriages did not extend into the landing beyond the front of the bottom tread, or if so, the extension was quite slight and of no significance. But for the appellant there was evidence from witness George S. Lyons that at least one of the 2″ x 4″ pieces extended onto the landing beyond the bottom tread so as to constitute a "definite hazard" to persons using the steps.

Somewhat feverish activities were afoot at the park on the date of the accident, as all hands were busily readying the premises for the official opening the next day. George Lyons, an employee of the Department of Parks, had arrived at the park a day or two before the accident; Lyons is a practical engineer with some forty years of experience. As he expressed it, his assignment "* * * was to get the lodge in shape for dedication on the 22nd." Lyons said that he observed a piece of 2″ x 4″ material extending "out beyond the tread carriage for about 12 to 15 inches." The witness felt that this constituted a definite hazard to users of the steps and, thinking it was just a piece of construction lumber left in place as a temporary measure, removed it. Lyons used a wrecking bar to force the lumber loose; he also removed the cross piece of 2″ x 4″ that had rested as a cleat behind the iron pipes. When asked whether these materials were securely fastened, the witness said that "It took some unusual effort to get them out." Lyons said that he observed the iron supports, four feet in width, and "assumed" that "they had been completed and someone had failed to take out the temporary work." He conceded that had he made a more critical examination he would have learned the true situation and would not have removed the material. Lyons was quite frank to admit that in his opinion the materials which he had removed were adequate to support the steps, and but for their removal, in his opinion, the steps would not have fallen. He also stated that he did not notify anyone of his intent to remove the material, nor did he advise anyone that he had done so. There is no specific evidence that appellees or their servants received any inkling that this "remedial" activity by Lyons had occurred, although one of the appellees probably used the steps after Lyons had removed the cleat.

About two hours after Lyons had removed the lumber and left the premises, the stairs fell while appellant and others were using them. The evidence indicates that after the accident the lower portion of the steps was resting on the concrete landing and the upper portion had fallen into the flower garden below.

The appellant was an employee of the Department of Parks and was assigned to official duty at the accident scene incident to readying the gift shop for the next day's dedication. He had no duty with respect to the construction, nor was he in any way connected with the contractor appellees. But we think we may by-pass any determination as to whether appellant was a business guest or a bare licensee, and assume, without deciding, that he was a business guest. It is the position of appellant that appellees have the duty of establishing "an all-inclusive negative" in order to retain their n. o. v. judgment. In other words, if there is any substantial evidence warranting recovery for appellant, appellees must lose. Without deciding that such a "posture" exists here, we conclude that even if it did the appellant may not prevail.

It is quite doubtful that actionable negligence may be ascribed to appellees, since the evidence by appellant's witness Lyons confirms the fact that the steps would not have fallen without removal of the supports. But assuming negligence, we think it is clear that the action of Lyons in removing the cleat was an unforeseeable and

abnormal intervening cause which produced a result that could not have been foreseen. In testing the present n. o. v. judgment we must accept Lyon's evidence that the 2" x 4" piece was projecting so far as to be a "definite hazard." But that "definite hazard" was not a risk that the stairs would fall— it was a hazard that some person would trip and fall. It would seem that the most normal way to have corrected that "hazard" would have been to saw off enough of the protruding 2" x 4" to make it flush with the face of the tread.

■ In Prosser, Law of Torts, 2d ed., § 49, is a scholarly discussion of the doctrine of intervening causes. That authority states that it is not always accurate to inquire whether the intervening cause was foreseeable, since liability has been imposed despite unforeseeable intervention if the intervention could be said to be "normal." Ibid. p. 267. However that may be, we think that the intervention of Lyons was neither foreseeable nor normal. It is amazing that a practical engineer (Lyons) would "assume" that the contractor had simply forgotten to remove some abandoned temporary work—and particularly so in face of the fact that the engineer had to employ "unusual effort" to pry loose the material with a wrecking bar. It should be said that the project engineer for the Commonwealth (Tierney) testified that he regarded the steps as safely installed. Moreover, the chief engineer for the Department of Finance of Kentucky testified that "Normally, no employee would interfere with the contractor's work. They should not interfere with it." This witness (McConnell) testified further:

"Q-48 Just one other question. Mr. Leary asked you about the park's employees seeing a 3-inch board protruding that might be considered a hazard, and whether they have a right to remove that board. If that board was attached to other timbers that had the function of holding in

place the steps that are involved in this action, do I understand you to say that the employee would or would not have a right to take that board loose without first taking it up with the contractor?

JOSEPH J. LEARY: (Of counsel for the plaintiff), 'An objection.'

THE COURT: 'The objection is overruled.'

A. I said he should go through the architect to the contractor and let him remove it for him; that would be his responsibility.

Q-49 But the employee would not have the right to go ahead and remove temporary structures of that kind, and if he did it he would do it on his own?

A. Yes, sir."

Under such circumstances we conclude the actions of Lyons were an intervening cause, neither foreseeable nor normal, and had the effect of absolving appellees from responsibility in this suit. Bengold Properties, Inc. v. Crook, Ky., 377 S.W.2d 56; Hines v. Westerfield, Ky., 254 S.W.2d 728, 729; Consolidated Contractors, Inc. v. Wilcoxen, Ky., 252 S.W.2d 429.

Appellant insists that the action of Lyons may not serve to exculpate appellees because the steps were not nailed or bolted at the top, and Lyons did not tamper with the top. The difficulty with this argument is that all of the evidence is that the steps did not fall because of any lack of anchorage at the top. There is no evidence to support the theory advanced by appellant on this point.

■ Appellant contends that appellees should have posted warning signs about the steps. There are at least two answers to that contention: (a) As the steps were installed they were not dangerous; (b) we have assumed, arguendo, negligence of ap-

pellees anyway, so the act of Lyons would yet be an efficient intervening cause precluding liability of the appellees.

The judgment is affirmed.

HILL, J., not sitting.